Case number 16-5250, Kaiser Hill Appellant v. United States Department of Justice, et al. Mr. Gill for the appellant, Mr. Scarborough for the appellant. Good morning. Good morning, Your Honors. My name is Spiesler Gill and I am the counsel for the appellant, Kaiser Hill. Your Honor, it is simply not the case that all security clearance cases are immune from judicial review. Those are not my words. Those are the words of this Court in National Federation of Federal Employees v. Greenberg. This case is not about second-guessing the decision of the executive. This case is about whether the FBI and Department of Justice violated Special Agent Kaiser Gill's constitutional rights in making that decision. We are not here, if this case was about the merits, we would be before this Court asking this Court to determine whether Special Agent Gill's actions justified revocation of security clearance. That is not what we are asking here. And we do not believe that EGAN prevents... Did you consider the McElroy case? I'm sorry, Your Honor? Did you consider the McElroy case? I'm sure we did, Your Honor. I don't recall that case at this particular time, but... Well, it seemed to me quite relevant. It's a Supreme Court case holding five to four, an opinion by Justice Stewart, that the decision to bar a cook at a restaurant on the Naval Yard in Washington was legitimate because the determination that she could not have a security clearance was not reviewable. Your Honor, there have been a lot of cases where security clearance is not reviewable. The difference is whether there is a liberty interest at stake here. No, the due process was exactly the argument in McElroy. That was a liberty interest at stake. That was the argument. And then in Webster Vigal and other cases, this Court has spoken in Cartsiva, in other cases the liberty interest, if there is a liberty interest at stake, and if we're able to show that there is a liberty interest at stake... In McElroy, Justice Brennan wrote a very strong dissent. If you read the dissent and the Stewart opinion together, you reach the conclusion that if the government specifically stated that someone is denied a security clearance because he or she is a Muslim, let us say, or a Catholic, there might be an equal protection claim. But you cannot inquire beyond that. In other words, other than a facial claim that's based on a statement that could raise a constitutional question, you can't go into the denial of the security clearance. Your Honor, this Court has reviewed exactly such decisions in Cartsiva. This Court has reviewed such decisions in Dovey Channing, in Ranger V. Tennant. In all those cases, there were security clearance issues, denials issued, and the Court actually went and did the analysis of whether there was a liberty interest at stake and in determining in Dovey Channing as they set off the... But if you follow the McElroy case, which of course is an important case... Yes, Your Honor. You can only raise such a thing if the statement is made that you're denied a security clearance and therefore you can't have the job because you're a Muslim or because you're a Catholic. But you can't go beyond that. Again, Your Honor, I would argue that this Court has done exactly that in Cartsiva. The Court remanded the case back to the district court for further proceedings to look to see... What was the... Remind me what the facts were in that case. Your Honor, in Cartsiva, there was a Russian translator working at the Department of State whose security clearance was revoked. And the Court did an analysis of whether there was a liberty interest at stake. What was the claim in the case? A due process, Your Honor. No, what were the facts? What were the claims? Your Honor, it was a Russian translator. No, no, what was the claim? What was the reason given? Was there a statement made by the State Department? There was not a statement made by the State Department, Your Honor. There was a statement made that this was believed that she had failed to disclose something on her security clearance application. And then as they were reviewing that, they had stated that they were going to remove her from a particular contract in the State Department. This Court wanted to do an analysis to see if it was just being removed from this particular contract, whether they were being removed from the Department of State, or whether she was being precluded from working as a Russian translator as a... Was there a denial of security clearance? That was the case of denial of security clearance? Revocation of security clearance, Your Honor. I'm sorry. Mr. Gilt, there are... Yes, Your Honor. The good answer is, and that's brief, but then I'm going to have to address the question of whether there's limited interest here. Because under our case law, your client got all the process that was due before the ARC got a hearing. And so in our case, which is exactly what we did there. Now, Your Honor, this is at page 35 of the government's brief. So you had a full hearing before the ARC. So I'm going to assume there's a little bit of interest. You know, your client got all the process that was due, and you didn't respond to that. Would you like to now? Yes, Your Honor. I believe we did. When we were arguing that the hearing... They did what? You did respond? I believe so, Your Honor, when we responded by saying that the hearing before the ARC was not a full and fair hearing because of the FISA violation. Well, that can't be right because, as the district court pointed out, the revocation of the security clearance did not turn on any evidence obtained from FISA. It turned only on evidence obtained during an interview where Mr. Gale conceded that he had improperly accessed FBI files. So that can't possibly be a basis for... Your Honor, I respectfully disagree with the district court's determination. Why? Right after the ARC, there was a six-year wait between... No, but can we write about ARC? Before ARC, Mr. Gale conceded that he had improperly accessed FBI files. He conceded it was wrong, and he basically threw himself in the mercy of the panel, right? That was it. And the panel said... Correct me if I'm wrong. The ARC said, disciplined, removed the security clearance because of the improper access of FBI files, information it learned from Mr. Gale. Correct? Correct, Your Honor. Okay. So the FISA warrant isn't relevant to whether or not there was a fair hearing before the ARC. Your Honor, I would respectfully disagree in the sense that the FISA case is allowed to continue on, and if we are allowed to get to the discovery phase, we will be able to demonstrate that there are other agents similar, who have access to the same files, those same records, who have not had their security clearance revoked, who have not been terminated. The reason we believe that we did not... No, go ahead. Finish, and then I'll... The reason we believe that we did not get a full hearing before the ARC is because we do believe the ARC considered information gained from a FISA wiretap without notifying Special Agent Gale that they were going to consider that. You've made two points here. Let me go back to your first one. Yes, Your Honor. Let me go back to your first one. That is the argument that the FBI treated non-Muslims who improperly accessed FBI files differently from Muslims, right? Correct, Your Honor. So I looked pretty carefully in the record, and I couldn't find it, but as far as I can tell, that argument was not made before the ARC. Am I right about that, or did you make that argument before the ARC? Yes, that argument was made before the ARC. Can I point to something in the record that tells me that? Yes. I'm trying to find it. It's in our complaint. Well, your complaint alleges that that happened. Your complaint alleges that the FBI treats Muslims and non-Muslims differently with respect to accessing FBI files. That's in your complaint. But my question was, did you make that argument before the ARC? In other words, did you say to the ARC, well, one of the reasons you can't punish him is because the FBI doesn't treat non-Muslims this way, doesn't punish them this way, doesn't take a lot of security clearances. And I need to know, I could not find that argument. The only argument I could find in the record that Mr. Gill made before the ARC was basically a plea for mercy, that don't take away my security clearance. It doesn't say don't take away my security clearance because you haven't taken away from non-Muslims. At least I could have found that in the record. Can you point to something in the record that will tell me that? General, I believe it's in my brief, initial brief with the Department of Justice in response, motion of opposition. Opposition to what? To the motion of dismissal in the district court. I'm not asking you a question about the district court. I was asking you a question about the administrative procedure before. No, no, I did make it before the ARC. Judge Tate will ask you for a reference in the record to where you made that argument. So you're saying you had a memorandum that you submitted to the ARC? Yes, Your Honor. And can we find that in the record? We have not attached that memorandum to the district court briefs, to our initial complaint. All right. Before the ARC, did you make the argument that you make in count two of your complaint that because you did not have notice, you were unable to present a full defense to the evidence when you appeared before the ARC? Your Honor, we couldn't make that argument because we did not know the ARC was considering wiretaps from a FISA warrant at that time. We only found out subsequent to that when the ARC and the chairperson of the ARC requested a memorandum from OLC, asking whether FISA and once applied to the ARC or whether Section 106 FISA applied to the ARC or if it was just judicial proceedings. And OLC opined that it did apply to ARC and people before the ARC. If the government is going to use evidence gained from an NSA wiretap, FISA wiretap, then they have to notify. The reason we believe that that's so important is because one of the issues before the ARC and one of the reasons for his revocation is because he was accessing these files for his family members. One of his family members. Based on his own admission? Correct, Your Honor. And I just need, Judge Tatel was pursuing that with you earlier. No, we're not disputing that Special Agent Gill. We have never disputed at all at the ARC or at any briefing stage that Special Agent Gill accessed those files. He made a bad judgment in accessing those records. Why is the FISA relevant at all? The information that came from FISA is the information that he concedes. I don't get it. Your Honor, the information from FISA is that one of the members of his family, me, was under a NSA warrant at the time. How did that information, how a family member, his brother, is under a FISA warrant? We believe it's significant information and we do believe that that affected the ARC's decision. That's why the ARC sought an opinion afterwards. Had Special Agent Gill known of that fact, Special Agent Gill's defense would have been tailored to address the issue. I don't understand. If he conceded the very fact that came from, allegedly, the FISA warrant, why is it relevant? Well, he didn't concede the very fact, Your Honor. The issue of fact, he conceded that he had improper access to the files of family, right? No, that was not an issue, Your Honor. His security clearance would not have been revoked as we stand before the ARC. As I believe was stated in my motion, there are other agents who access similar records, who access the FBI's file system for family members who were not, who didn't have their security clearance revoked, who were not terminated from the FBI. We believe Special Agent Gill was terminated and revoked because he is Muslim and because it certainly adds another issue for him to address if one of his family members is under an active FISA warrant. And that is, I think, the exact reason why Section 106 of the Act exists. If the government is going to use that evidence because it is highly prejudicial, it should at least notify the person that they're using it against that that is evidence that we're going to use. Otherwise, there would be no reason for Congress to put that section in there and government would not have to notify the person that they're planning to use evidence gained from that. We don't know what evidence was gained from that. We don't know what FISA considered. What we do know is that they, after the ARC, if that evidence was not important, the ARC would not have sought an opinion from OLC to see if they needed to notify Special Agent Gill or not, if that was not relevant information for them as they're making their decision. Because they sought the opinion, we do believe that that was information that was important And we do believe that had he known about it, he would have squarely addressed that issue of being under a wiretap. It is a prejudicial issue. And certainly, if you're deciding whether foreign influence is at play and one of your family members is under an NSA warrant, that is something that an ARC absolutely would consider. And without him knowing that they're considering that, that left him at a severe disadvantage in mounting an effective defense. That is why we believe the ARC procedure, ARC process was not meaningful. All right. Shall we hear? The government. May it please the Court. Charles Carver for the Department of Justice. I'm standing in for my colleague, Janie Lilly, who had a medical emergency yesterday morning. Yes, we appreciate that. So I'll do my best. Could you raise that podium a little? Because you're too tall for the. OK. Sure. Well, you can raise it, can't you? It doesn't work. Oh, the whole thing. Oh, where is that? What? You'd think I would know. Oh, it doesn't work in here. It doesn't work in here. Oh, it's a long cord. I'm sorry. I'll do the best I can. You're just too tall. Can you help us with this point about what was argued before the ARC? Yeah. I'm not aware of anything in the record that shows what was argued. Again, this was decided at a very preliminary stage. So we're working off basically the complaint and what was attached to the complaint, which includes the ARC's decision. And I want to focus on the ARC's decision because. I want to just be clear. Does the government read the complaint to raise a procedural due process issue as distinct from some aspects of the brief that suggest you're just dealing with it as a substantive due process claim because you argue that necessarily it goes to the merits of whether the security clearance should have been revoked or not? I think that is the gist of our argument, Your Honor, is that these due process claims and the constitutional claims in general are repackaged. I'm not sure it's a substantive due process. I think it's an equal protection claim. Well, the equal protection claim is where it's a good place to start because the equal protection claim is essentially just the type of claim that you would see under Title VII. It's a claim of discrimination based on national origin, religion, those sorts of things. And the district court said there are a lot of reasons why that claim was filed. One is that under GSA v. Brown, you know, Title VII is the exclusive remedy for that sort of claim. How can it be an exclusive remedy if you can't bring it? God, I can't hear. Excuse me. How can Title VII be an exclusive remedy if you can't bring a Title VII case? Well, Egan says you can't bring a Title VII case, so how can that be the exclusive remedy? I don't think any of that. All of our cases, all of our cases on this are statutory cases, and many of them, many of them say, you know, constitutional claims are different. But I don't think the upside of that is that because your statutory claim that you would normally bring under Title VII is barred by Egan that you get to reconfigure and repackage it as a constitutional claim. The court in the Tenth Circuit in the Hill case addressed this type of situation. It says if Egan can be bypassed by simply invoking constitutional rights, it's hardly worth the effort. And that's the sort of the fundamental point throughout this, is that simply repackaging the claims as constitutional claims and then basically attacking the merits and the process by which the FBI, you know, is using the evidence that we have here and the, you know, evidence it considers. Suppose the FBI revoked all Secretary Clarence's for Muslim, African-American agents. Could they not bring a constitutional challenge to that? Your Honor, I think that what your hypothetical raises is the exception. This Court has clearly recognized for challenges to policies, constitutional challenges to policies in the Greenberg case when we're not clear what the expert thinks. Suppose it's just a practice. Suppose it's just materially revoking individually. Suppose someone, imagine whose Security Clarence is revoked, alleges in his complaint that this is part of a pattern of revoking Secretary Clarence's for African-Americans. That's what he's alleging here. He's alleging here in his complaint that the FBI treats Muslim special agents differently from non-Muslim agents. That's exactly what he's alleging. He's alleging that, and I think it's useful, as your Honor said. But stick with my hypothetical. Why isn't that? And you just conceded that you could build such a case. I conceded that we're not quarreling with the Greenberg proposition that you can bring a constitutional claim to challenge a procedure. I think there is a distinction in the type of constitutional claim that goes and attacks the merits of an individualized Security Clarence determination. That is what's going on here. No, no, no. His allegation is that non-Muslims are treated as a class. We're treated differently. Non-Muslims who commit this offense are not denied security clearance. With respect, your Honor, I think that his allegation is about his treatment as a Muslim, that he was disciplined more harshly than other people. Non-Muslims. That's correct. Again, this is all about his security clearance and individualized determination. That's true of any allegation that a class of people is treated differently on the basis of race. Of course it relates to his case. Otherwise, he wouldn't have standing to bring it. What gives him standing to bring it is that he himself lost his security clearance. So clearly it's about him. But his allegation is broader. His allegation is that non-Muslims are treated differently for this kind of offense. I don't understand. I don't know of any case that says he couldn't bring that challenge. Is your position that he did not make a complaint that Muslims are treated categorically unfairly by the FBI on security clearances? Yes, Your Honor. In other words, you're saying if he made that allegation in the complaint, it would be a different case? It would certainly be a different case. But I'm suggesting – Would he have a right to proceed in that situation? Well, again – If he had evidence that there was the FBI, instead of evidence that non-Muslims were treated better than he was, if he had an allegation across the board Muslims were discriminated against by the FBI in security clearances, would you say at that point he had a right to proceed? I think it would be a different case. No, no. That's what hypotheticals are for. The answer to that would depend on how much it would fall into the category of cases recognizing Greenberg. You could have a constitutional challenge. That sounds like a de facto policy of treating Muslims or some disfavored class differently. That's not what we have here. You don't have an allegation in that? I don't think we do have an allegation. Again, this is a very limited challenge. He basically, as the Court was observing earlier, he basically came to the ARC saying, I admitted to this misconduct. The ARC affirmed the revocation of his security clearance. I wanted to start with this quote on the ground that, quote, his admitted misconduct in accessing sensitive information for personal reasons raises straightforward concerns regarding his ability to safeguard classified information and not disclose it for personal reasons. That's the stated rationale by the trained adjudicators on security clearance determinations. So, in other words, I just need to be clear on this. This Court, in your view, is bound to read the ARC's opinion as relying solely on his admission and as Judge Tatel characterized it, throwing himself on the mercy of those hearing his case and that in no way was the ARC influenced in looking at the nature of his confession and the implications that it might have for his future conduct because it knew that, in fact, a family member was being investigated? In other words, what I'm trying to get across, it's one thing supposed in a hypothetical. I mistakenly did this. I'll never do it again. And he's from a farm in Iowa and the FBI has no information about any family member or any acquaintance that would in any way adversely affect national security. That's what I'm trying to understand about this case. It may be all about him, but to the extent the Court has said that there can be these procedural due process challenges, what is the role of the Court? Well, again, I think that the basic rest of our argument is that you can't second-guess the stated reasons given by the trained adjudicators who are making the security clearance. The stated reason here — That's the way the brief is written. Can you bring to court a claim not as to the ultimate decision, but the process by which the decision was made in the sense you had a hearing, but it was unfair for the following two reasons? Well, so I guess our response to that is that type of due process claim, distinct from a claim challenging a general policy governing security clearance procedures, which is the Greenberg sort of situation, that type of due process claim that you're positing is inextricably tied up with the merits. And if I could just point to, like, the different due process claims that he alleges in this case, the first one is that the agency missed the ARC, misapplied the adjudicative guidelines. And basically the argument there is that the agency couldn't rely on these foreign influence concerns. There's two responses to that, a bunch of responses to that. One is that they didn't. There's nothing on the face of the ARC's decision that suggests that it did rely on foreign influence concerns. Secondarily, when you're talking, there's nothing on the face of the applicable regulation, 32 CFR 147.4, that says you can't rely on foreign influence concerns just because someone is a, you know, natural-born U.S. citizen. There's lots of concerns that can play into, you know, having serious doubts about someone's ability to have access to classified information. During the Cold War, there was often someone was denied a security clearance because they came from a country covered under Soviet, under the Warsaw Pact. And they had family there and could be subject to blackmail, even though there was, you were absolutely innocent. You could be denied a security clearance in that situation. Right. I mean, I think the question goes to, there's lots of things that can play into security concerns. And, Judge Rogers, going back to your question, that type of due process claim, you misapply the adjudicative guidelines, that's inextricably tied with the merits, the judgments about what evidence is necessary. Your view is that would be precluded by Egan. Yes, Your Honor. So that logical conclusion is what Egan means. And I think it's, to expound on that, I think that this Court's decision in Rattigan, surprisingly, is helpful for us on this, in the sense that it. Let's finish talking over here. I've been waiting for the opportunity to say that to this particular group of judges. But in the sense that you recognize in Rattigan that it's important for the trained adjudicators there to have full access to even doubtful information. And you draw a line there as to knowing falsity and carve that out. But let me say. Yes. The logic of your argument, though, suggests that your response, that he had, quote, a fair hearing, is irrelevant. And I don't see the government taking that position. And that's why I'm trying to understand what this Court's role might be in looking at a procedural due process argument. He had a hearing, but he came and sort of was blindsided. And so he didn't have the opportunity either to prepare a full defense, much less to present it. So let me try to be very clear, is that we're, in Section 1 of our brief, we're arguing that Egan precludes all the claims, including the due process claims, and especially the misapplication of the adjudicative guidelines, because ultimately they go to the merits and the process, and all that stuff that Egan bars, that's heartland Egan material. Secondarily, we have a section that, you know, goes off on some of the grounds that the district court ruled on, because the district court admittedly did not rule for us on Egan across the board. It ruled on a variety of due process grounds. So it's an argument in the alternative. We do think that this Court, we would prefer a decision that stops with Section 1 of our brief and says Egan bars the claims. But we do, as the government often does, argue in the alternative that there was no denial. But I thought some of your answers as to practice or policy, and you acknowledge our precedent, wouldn't allow you to take that position. Indeed, your brief says it's an open question in this circuit. Well, what we're acknowledging, just to be very clear, is we're not quarreling with Greenberg. We're not quarreling with cases that say you can have a constitutional challenge to a policy, a regulation, that sort of thing that, you know, deals with security clearance decisions. We're not saying in a broad-brush way security clearance, security determinations are completely off limits. What we are suggesting is that when you, as the point of here is, when you're coming in and you're second-guessing an individual adjudication that, you know, and again, where he's had a lot of process at pretty high levels, and you're saying that things like, you know, as a due process claim, they misapply the adjudicative guidelines, or they must have relied on some secret FISA evidence that nowhere appears on the face of the ARC's decision. You're doing that. So what's your best response, then, to why it asked, the ARC asked for an OLC opinion? I can't speculate on that, Your Honor. I mean, again, I think the best response is that at the end of the day, there was no FISA evidence considered. There's no indication on the face of the ARC's decision that there was any FISA evidence. But didn't the district court actually find that, as a matter of fact? I'm sorry? The district court actually had a finding on that, right? The district court found that there was, that there didn't rely on any evidence from the FISA board, right? That's right, and I was just going more directly to the actual face of the decision, because I think it's important that in the even world, you can't sort of assess for pretext the stated reasons given by the trained adjudicators for revoking or affirming the revocation of a security clearance. I mean, that's basically, that's core line. You know, it's basically in the McDonnell-Douglas context. You said that, you know, figuring out whether a stated reason is pretextual would run smack up against EGAN. And the same principle applies even if you are dealing with something that's configured as a constitutional claim, whether equal protection or due process. So there is no procedural due process protection in an EGAN context. Is that your position? I think it's slightly more limited. I think it's slightly more limited, Your Honor. I think it's when the due process claim challenges essentially the process by which the agency, you know, undertakes to review the security clearance revocation, the evidence it considers, those sorts of inputs. Again, Rattigan is helpful in this. That is something that courts shouldn't be looking behind under EGAN. So there's no way to look at what the subject's opportunity to defend is under EGAN? I don't think so in the security clearance revocation in a specific individualized decision. As far as the evidence, we don't really care what the employee may say in defense. I think the upshot of EGAN, yes, is that you can't, the court cannot look behind that second guess, the rationale given by the trained security clearance adjudicators. I'll take that. I'll take your point. I'll take this case. We have the ARC decision. We'll look at that. Right? And we'll work back at it. Suppose there had been, suppose we had made an argument before the ARC that the FBI treats Muslims and non-Muslims differently for this kind of offense, and it just didn't appear in the ARC, they also didn't account for it. We could, that would be a different case, right? I mean, if the ARC simply ignored that argument. Ignored what? That argument. I'm not sure, Your Honor, because, again, looking behind the face of the ARC's decision is a reasonable EGAN clause. Suppose you had actually filed a brief before the ARC with data which showed that they're treated differently and the ARC ignored it. That's not this case. I agree with you. It's totally not this case. I'm avoiding saying that. What? I'm avoiding saying that, that it's not this case. Right. I'm hypothetical. I'm hypothetical. I don't think that they made that argument. They wouldn't have been looking beyond the ARC opinion. They would have just had evidence that the ARC ignored prerogative evidence. I think that you, in some respects, you would. You would be saying that the ARC's stated grounds for its decision, in other words, like here the stated grounds were that, look, the admitted misconduct was sufficient. That alone is enough. Wasn't that insist on the ARC at least explaining why that evidence was not relevant? Well, again, that's sort of my point, is that if the ARC didn't explain, if that argument had been posed to the ARC, which it was not here, if it had and the ARC ignored it for whatever reason, the Court would be in the position of second-guessing the ARC and essentially finding that the stated reasons given by the ARC, that the admitted misconduct was by itself enough. In other words, you could have inputs and the ARC could essentially self-regulate and say, we don't need any of those inputs. So the government's position is it doesn't make any difference. I was asking Mr. Gill carefully to find out whether he had made this argument before the ARC, and your point is interesting. I hadn't thought about it this way. Your point is that doesn't make any difference in the evidence situation, right? To be exact. What we have to do, we look at the ARC thing and we just, and I'm not saying it's wrong. I just want to make sure I understand the government's position that the ARC opinion is it and that's it, and if there's evidence, if you made an argument about discrimination, then we just have to assume that the fact that the ARC didn't mention it means that the ARC thought it wasn't relevant. End of case, right? I think that's right, Your Honor, and the reason why is that, again, the ARC gave reasons. In this case, the ARC said the admitted misconduct was a sufficient basis by itself to support the revocation of the security guards. You don't have to, we don't have to accept that for you to win this case, right? Like, I take it, you know, you could as a winner on the basis of the fact that he just didn't make the argument, right? You could win it on that grounds as well. But he said he filed a memorandum. Yeah. All right, do you know anything about that? I do not know anything about that, and, again, it's not in the record. I do know that it's not in the record. The record is very sparse in this case. Well, it's not in the record that we have, but it may be in the record that the ARC had. It's possible. And if it's all going to turn on whether, that's why I'm trying to press you on this point. Right. That is my point, yes. That it doesn't matter what the defendant may say. That's right. And, I mean, the extent to which the court would have to go sort of rummaging around in the security clearance process, I mean, the sort of process that led up to, you know, the ARC's decision. But you're arguing basically that Egan, his confession, the ARC decision, he doesn't even have a right to a hearing. Well, he got a hearing, but my point is simple. But his argument is he got a hearing with his arms tied behind his back, so he couldn't present the evidence that he would have presented, had he been aware that the government was going to present certain evidence. My point is. I just need to feel like I'm pressing you because, and I don't want to go back to the 50s and, you know, have that sort of argument, but the government has at least in its cases, and we seem to have assumed that there is some opportunity for a fair hearing in the security clearance revocation process. And we haven't identified how deeply we can delve into that. But the questions you've heard is that if it was, you know, a clear proffer of a policy, et cetera, that there would be some process to address that. But now I think you're telling us there is no process to address that. And I think that's sort of. Suppose the denial of security clearance had been done by the FBI without any hearing at all. Yeah. Based on an informal adjudication. You know, just, you know, on administrative law and formal adjudication, just the supervisor or somebody who's in charge of security clearances said, gee, this is a problem with this guy that's denying security clearance. Your view is under Egan that is not reviewable. That's correct, Your Honor. And there's a lot. It's irrelevant whether you had an internal procedure or not. That's correct, Your Honor. Most security clearances are denied without regard to a process at all. Well, there are certainly more summary procedures. And often the challenges, you know, they often arise in the Title VII context. The challenges arise and all you have is a denial and, you know, the government's post hoc explanation for the denial. And the courts are uniformly. They hold that you cannot have review of that process or the investigative steps leading up to that process. There are legions of cases holding that. I think that's right. So in this case, actually, we have more procedure than you typically have in a denial of security clearance. And, yes, Your Honor, I agree with that completely. And we may have gotten into trouble by talking about the additional procedure because it may, in some respect, suggest that the court should evaluate that. But that's why I try to make clear that Section 2 of our brief is an argument in the alternative. Section 1 is where we think the court should rest is on the Egan grounds with respect to all of the claims. But speaking of that, the court – Ken and I have had a lot of Webster. What do you – how do you distinguish Webster? I can't hear. Webster. Webster. Oh, Webster. Yeah, let me talk about Webster. The court said that the decision – the decision, I apologize, CIA's decision, quote, both sensitive and discretionary could be reviewed for constitutional error. And that's a post-Egan case. That's right, Your Honor. It's the same year as Egan. I'm not sure I can do any better than Judge Kuczynski in the Dorfman case. I'm not sure I can do any better than Judge Kuczynski in the Dorfman case where he talks about – Let Judge Kuczynski say – He talked about Webster and talked about how that it did not present – the issue there was whether the NSA statute foreclosed judicial review of a constitutional claim being brought there. And so that presented a different situation. Because in 2.1, the statute hasn't been resolved yet. Yes. That's right. Another distinction. Excuse me. Another distinction. Webster, the plaintiff was fired. It wasn't just a denial of a security clearance. That's correct, Your Honor. There's a lot of distinctions. And the point here is that when you're talking about sort of the dueling, you know, the executive branch's authority over classified material given by the Constitution, that's a different question. The Haggad case in the Fourth Circuit illustrates another court struggling. We've cited that in our brief. In your brief, and I realize, you know, the last-minute substitution, et cetera. Sure. But, you know, you acknowledge that this Court has never directly addressed the issue that Judge Kuczynski was identifying. That's correct, Your Honor. So to accept your first argument, we would have to decide that question, wouldn't we? Well, there's a lot of ways you could go about that. I mean, again. I don't know. But you're saying these are alternative arguments. So you want us to cite Egan and just forget about everything else. But your own brief acknowledges that we would have this issue before us. Well, certainly. I thought the alternative argument was to give us a way to avoid that very difficult question and to move on to these other points. I think that is an alternative available to this Court, especially under the decision in ORSAC, which makes clear that Egan is not a jurisdictional, you know, decision, so you could reach the alternate grounds here. I guess what I was trying to suggest is that both Dorfmant and also the Fourth Circuit more recently. The problem with the alternative grounds, and this is what's troubling me, is that really implicitly get into the merits of the question? Is that inconsistent with Egan? Your reading of Egan? Your view, if I understand it, and putting together Egan and Webster V. Keeping in mind, I think, McElroy, if there was a statement, a flat statement, that you're denied security clearance because you're a Catholic or because you're a Muslim, that would be challengeable because that would be reflecting across the board policy that you could challenge. It wouldn't be an internal, it wouldn't be specific to just one individual. But a denial of security clearance based on a judgment about an individual is not reviewable. I think that's a fair summation. And the statement, which I gave at the beginning, a statement, you're denied security clearance because you are a Muslim or because you are a Catholic, that would be an equal protection violation, not a due process problem. That's correct, Your Honor. I think that's right. And my point, where I tried to start this argument is, again, that the ARC gave a reason. It said the admitted misconduct was enough to sustain the revocation of the security clearance. That being the case, any review of the inputs that came into that, the process, the evidence that the ARC may or may not have considered, all of that process, this Court has reiterated, albeit in the Title VII context, Judge Rogers, that that is something that Egan shields from judicial review. The same principle applies equally to constitutional claims. Just because you can reconfigure what would otherwise be a Title VII claim as an equal protection claim doesn't mean that Egan principles cease to be relevant here and preclude the review. All right. Thank you very much. Thank you, Your Honor. Counsel for Appellant. Thank you, Your Honor. Your Honor, the ARC simply did not state that it was the admitted misconduct. The ARC also stated that it was the admitted misconduct. The ARC also stated that it was a foreign influence. I oppose what the ARC said. Your Honor. No, I shouldn't say no. I'm just making an announcement on this. The comment about Gannon's ties to his foreign-born relatives, the ARC describes that as the FBI's concern. Right? It says the FBI is concerned that he accessed this information, quote, quote, because of his ties to his foreign-born relatives. That's the FBI's concern. Then the ARC goes on and decides the case. And it decides the case solely on the grounds of his admitted misconduct. The ARC also stated that they believed that Special Agent Bell was the last one, but they could not overlook his foreign-born relatives, much as what we have brought forth about his application of the adjudicative process. There is no foreign influence here. The adjudicative process that's been ---- That gets into the reviewing the merits of this issue, right? Well, if there is going to be an adjudicative standard, Your Honor, we believe it should be applied. There is no ---- That sounds like you're sort of relying on the Administrative Procedure Act and say this is arbitrary and capricious. No, Your Honor. We're basically stating that the ARC looked and examined the fact that he was a Muslim. We're basically trying to present evidence of that. Foreign influence, there is no ---- That fact has never even been considered because there is no foreign influence. All the relatives that we're talking about are all U.S. citizens. Foreign influence, and if you look at the adjudicative standard, exactly refers to that. Foreign people in other countries who was, you know, just sort of like you pointed out in the Cold War, you know, Russian militants who could be susceptible to blackmail. That was not the standard here. The standard here, that was not the facts here. The facts here were all U.S. citizens who happened to be born in another country. We do not believe that the ARC or the FBI could have considered that. That is not an appropriate adjudicative factor. That is what we're stating. That was one of the things that we were stating. The other thing that I want to point out is this is at the motion to dismiss state. At best state, all of the facts must be construed in light most favorable to the appellant. We have made the claim that the FBI is treating, or in this case, treated Muslims differently. In our complaint, it clearly states that the FBI did this action because Special Agent Kiel is Muslim and also because of national origin. But you say it's different from whether or not that argument was made before the ARC. Yeah, the argument was made before the ARC. As I said, we did not attach the arguments. But again, I do not. But there's nothing in the record before us to demonstrate that, right? There is not, Your Honor. We did not attach. But, however, I do believe that because we are at the motion to dismiss phase, that that fact must be construed in light. Let me ask a question of what I asked of government counsel. In most cases in which there is a denial of security clearance, you don't have any procedure, formal procedure at all. It's just an informal adjudication, which is an administrative law term, for just an administrative decision. And then, Mr. Arnett. It's a fair theory that any determination of a denial of security clearance must, as a matter of constitutional due process, be accompanied by a hearing of some sort. Your Honor, if there are constitutional rights at stake, yes, there is. The ARC procedure exists, given appellate procedure, if you are or if you have. I understand about the ARC procedure, but it doesn't apply to all agencies and all departments of government, does it? Not the ARC or the Department of Justice, but every other agency does have some form of appellate review for revocation of a decision. So for revocation. Not for denial of security clearances. Not for denial. Your Honor, no. Your theory would be just as relevant for denial of security clearance as a revocation. I do believe there is a differential. The problem there is you're running afoul of Egan. I do, Your Honor. And so, in other words, I think we're diverted to talk about procedure here when procedure isn't really constitutionally necessary under Egan. Any procedure. Your Honor, even if that argument is correct, the issue comes down to if an appellant can identify a constitutional issue at stake, the court can review it. This circuit has held that over and over again. And, again, appellate court, the court said that. As the case that I believe is most innocuous because you do have one Russian translator working in the Department of State whose security clearance was revoked because there was some information that was not cleared up. The court in this, this court, this circuit held that she did have a liberty interest. This court remanded the case back to the district court because it stated that at this stage we do not know what the impact of that revocation will be, how it stigmatized her. We would like to have more. We talked about it. We mentioned a liberty interest, although I think it's an equal protection interest. But those terms get mixed up anyway. Yes, Your Honor. You know, the best quote that I can point this court to is they're saying what is, as the judges have asked, what is the role of this court in security clearance is what this circuit stated in National Federation in Greenberg. All questions of government are ultimately questions of ends and means. The MOU is legitimate. Its accomplishment may be entrusted solely to the president, yet the judiciary still may properly scrutinize the manner in which the objective is to be achieved. That is what we're asking the court here to do. ARC did hold a proceeding, but not informing, since foreign influence was clearly at play here, not informing the apparent that there is a FISA warrant out there on his family member and what the implication of that is going to be is significant. And the best evidence to prove that is the fact that the chair of the ARC requested an opinion from OLC on that, and it took six years from the time the ARC was held to issue a judgment on that. We believe that if this case is allowed to continue beyond the listen-to-dismiss phase, that we will have evidence through discovery that shows that Special Agent Gill was treated differently. My ones are treated differently than other agents in similar actions. Can I ask a question of government counsel? All right. Thank you. I just want to ask one question. Mr. Gill, could we hear from government counsel for a moment? I just want to ask one question. Is that correct that every agency dealing with national security provides a hearing on a question of whether a revocation of security clearance was appropriate or not? I'm just not, I can't answer for across the government. I think that the procedure is no. I think the answer is no. But, again, without the confidence to be able to say that, I hesitate to do that. All right. We have nothing in the record here. I think that's right. All right. Thank you. All right. Yes, we will take the case under advisement.
judges: Rogers, Tatel, Silberman